UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>      Plaintiff, )<br>           )<br>  v.          )<br>           )<br>BRENDAN SALMON   )<br>      Defendant. ) | Case No. 2:23-cr-00145 |

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE**

NOW COMES the Defendant, BRENDAN SALMON, by and through his attorney, Mark A. Kaplan and KAPLAN AND KAPLAN and hereby submits this memorandum in support of his request that the court vary downward and sentence him to a term of imprisonment of 72 months. The United States Sentencing Guideline Range is higher, but Brendan's request for a downward departure and/or variance is supported by his extraordinary rehabilitation efforts, experiences as a child, and other relevant factors under 18 U.S.C. § 3553(a).

**I. Statement of the Case.**

  A. <u>Charges</u>

On November 16, 2023, Brendan Salmon was arrested after Homeland Security Investigations (HSI) filed a complaint, charging the defendant with Distribution of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and Aided and Abetted Possession with Intent to Distribute Fentanyl, in violation of 18 U.S.C. § 2.

On November 17, 2023, Brendan appeared before The Honorable Kevin J. Doyle and was ordered detained.



KAPLAN AND KAPLAN
ATTORNEYS AT LAW
PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

On November 29, 2023, the Grand Jury in Burlington, Vermont returned a six-count Indictment charging Brendan with various drug distribution offenses.

On January 25, 2024, the Grand Jury in Burlington, Vermont returned a seven-count Superseding Indictment charging Brendan with various drug distribution offenses.

On August 7, 2024, the government filed a two-Count Superseding Information, to which the defendant pled guilty. The charges are as follows: a) Count One: Between at least in or about mid-2022 and on or about November 16, 2023, in the District of Vermont and elsewhere, the defendant, Brendan Salmon, aka "Nice," knowingly and willfully conspired with others known and unknown to distribute fentanyl, cocaine, and cocaine base, Schedule II controlled substances, in violation of 21 U.S.C. § 846.

b) Count Two: On or about September 19, 2022, in the District of Vermont, the defendant, Brendan Salmon, aka "Nice," in connection with the acquisition of a Glock 21 Gen handgun and Ruger-57 handgun from Parro's Gun Shop, a federal firearms dealer, aided and abetted another person to knowingly make false and fictitious oral and written statements intended or likely to deceive the federal firearms dealer with respect to a material fact to the lawfulness of the sale of a firearm, specifically the statement that the purchaser was the true purchaser of the firearms when in fact and known, the firearms were purchased for Salmon, in violation of 18 U.S.C. §§ 922(a)(6) and 2.

On September 16, 2024, Brendan appeared before The Honorable Frank P. Geraci, Jr. and pleaded guilty to Counts One and Two of the Superseding Information pursuant to the plea agreement filed with the Court on August 7, 2024.



KAPLAN AND KAPLAN
ATTORNEYS AT LAW
PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

2

B.   Offense Conduct.

Brendan was involved in the distribution of drugs in Vermont from approximately September 2022 to his arrest on November 26, 2023, and was also in possession of firearms.

## II.  Defendant's Objections to the PSR.

Brendan has the following objections to the PSR:

**Paragraph 13:** Defendant objects to that statement that Elaine Brochu was a facilitator for Salmon.

**Paragraph 16:** Defendant has no information with respect to the allegation in Paragraph 16.

**Paragraph 23:** Defendant states that Nelson made less than 12 trips for him.

**Paragraph 28:** Defendant objects to Ulrich's statement that Defendant frequently asked for firearms. Also Defendant has no information with respect to any overdoses.

**Paragraph 29:** Defendant denies that Bowie was his right-hand man and states that he never purchased an AR-15. In addition, Defendant never threatened anyone as alleged in Paragraph 29.

**Paragraph 36:** Defendant has no idea of a submachine style handgun being observed on his couch.

**Paragraph 38:** Defendant denies that Lavaggi sold drugs on his behalf. She actually purchased drugs from Defendant and sold them on her own.

**Paragraph 39:** Defendant objects that the individuals indicated sold drugs for him.

**Paragraph 40:** Defendant objects to the statement that the Lavaggis and Wescoms sold drugs for him. He also never purchased an AR-15. Also, Scott Taylor never sold Defendant any handguns.


KAPLAN AND KAPLAN
ATTORNEYS AT LAW
PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

**Paragraph 41:** Defendant disputes the following:

(a) Lavaggi did not sell drugs for the Defendant.

(c) Defendant did not leave Lavaggi drugs to sell on his behalf.

(e) The individuals referenced in 41(e) were not members of his so-called drug trafficking organization.

(f) Defendant objects that he asked Laraway to purchase firearms for him.

(g) Defendant objects that he purchased firearms from Dilan Jiron.

(h) Again, Defendant objects that Casey Ainsworth stole a firearm which he then traded to Defendant in exchange for drugs.

(i) Defendant objects to the reference to firearms.

(j) Defendant never requested sexual favors in exchange for drugs.

**Paragraph 50:** Defendant objects to the 4 level enhancement.

**Paragraph 51:** Defendant objects to the 1 level enhancement since he never exchanged drugs for a firearm from Pamela Putvain.

**Paragraph 52:** Defendant objects to the 5 level enhancement. Specifically, paragraph 52 does not indicate which of the various violations Defendant is supposed to have violated.

**Paragraph 55:** Defendant objects to the 4 level enhancement.

III.   **Motion for Downward Departures Pursuant to U.S.S.G. §5K2.0**



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

4

A. **Downward Departure Based on Defendant's Extraordinary Childhood Experiences**

Brendan requests a downward departure based on his extraordinary childhood experiences.

The case of U.S. v. Floyd, 945 F.2d 1096 (9th Cir. 1991) is relevant to the instant matter. In Floyd, the Court departed downward from the guidelines based upon the defendant's abandonment by his parents and lack of guidance as a youth.

Brendan is requesting a downward departure based upon his extraordinary childhood, in particular the circumstances under which he was raised, including but not limited to the lack of guidance and support from family members as well as extreme physical and mental abuse suffered by him.

There is no question that Brendan had an extremely dysfunctional childhood. Anyone assessing his childhood would have easily predetermined that the chances of Brendan leading a normal, productive, life were virtually nonexistent. Brendan was raised in the projects in Hartford, Connecticut and as a child and adolescent, had very little to no adult supervision. Certainly, Brendan did not have a father figure or a mentor to guide him through difficult experiences that he had growing up.

Brendan's mother was far too busy to provide the necessary supervision that Brendan required as a young boy. She was a single mother who worked full time and was responsible for the care of 5 siblings who resided in the household. Brendan never met his father, and as a result tended to gravitate toward the older boys in his neighborhood.

As a result of no, or limited, supervision Brendan at an early age began to spend more of his time on the streets of Hartford, Connecticut which had an extremely negative impact on him.



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

Brendan lived in a drug infested neighborhood where extreme violence occurred on a daily basis. From a very young age, Brendan witnessed drug transactions taking place frequently outside of his apartment and also frequently either heard gunshots or saw individuals being killed by gun shot. In terms of violence, by the time Brendan was 16, he had experienced 2 extremely serious incidents where he was injured by a firearm.

On one incident, Brendan was riding in a vehicle with several older boys who he thought were his friends. At some point, the vehicle pulled over and one of the individuals in the vehicle began shooting at Brendan. Brendan was hit 3 or 4 times and suffered significant injuries as a result. Brendan was 14-years-old at the time. Another incident occurred when Brendan found a firearm that looked like a shot gun on the ground, and when he picked it up it went off, causing serious bodily injury to him. Brendan now has an artificial eye and does not have the use of his thumb on his right hand as a result. Brendan was 16-years-old at this time. Interestingly enough, it was never Brendan who engaged in violence himself.

Based on the above description of the significant difficult situations Brendan has endured during his life, it would be appropriate for the Court to grant Brendan a downward departure due to his childhood and young adult experiences.

**B.     Downward Departure Based on Defendant's Extraordinary Rehabilitation**

Brendan requests a downward departure based on his extraordinary rehabilitation efforts.

The Second Circuit Court of Appeals has clearly stated that rehabilitation departures are appropriate. In <u>United States v. Maier</u>, 975 F.2d 944 (2nd Cir. 1992) the Court acknowledged, that although the alleged drug dependence may have been taken into consideration by the guidelines under U.S.S.G. §5H1.4, Congress... "did not preclude departures for all factors that are in any



way related to some factors that the Commission has considered" and concluded by saying that a Defendant is entitled to a downward departure for rehabilitation which occurs <u>after his arrest</u> (emphasis added) for the following reasons:

> ... though drug dependence is not a reason for a departure, the related awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefits the individual and society, is such a reason.
>
> See also <u>U.S. v. Gotto</u>, 979 F.2d 92 (2nd Cir. 1992) and also <u>U.S. Workman</u>, 80 F.3d 688 (2nd Cir. 1996).

As the Court stated in the <u>Workman</u> case on page 701, "... rehabilitation efforts by drug addicted defendants may justify downward departures under appropriate circumstances." Finally, the case of <u>U.S. v. Newlon</u>, 212 F.3d 423 (8th Cir. 2000) is also relevant. According to the Court in <u>Newlon</u>, the court did not abuse its discretion in departing downward where a defendant, prior to his arrest had, at his own request, spent 85 hours in drug and alcohol programs and his counselor reported that he had a sincere desire for treatment and, in addition, his family noted a marked improvement in his behaviour and attitude.

Brendan has made amazing progress in his efforts at recovery, both from his use of drugs, but more importantly in his understanding of what he needs to do to refrain from engaging in future criminal activity. There are several examples of the progress that Brendan has made.

First, Brendan has had only one incident during the entire period of time that he has been incarcerated. Specifically, he has been a model inmate. The one incident does not appear to have been Brendan's fault since he was defending himself from another inmate.

Secondly, Brendan, whenever given the opportunity, participated in as many courses as



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

were made available to him. For example, Brendan has obtained numerous certificates for some of the courses he has participated in while incarcerated.

Finally, Brendan in his interview attached as exhibit A, shows a real understanding of why he cannot continue the life he had lived until his arrest in this case and is certainly looking forward to creating a new life for himself.

C.   **Downward Departure Based Upon the Totality of Circumstances**

For reasons set forth herein, Brendan asks this Court to grant a downward departure on the grounds that the totality of circumstances present in this case differs significantly from the "heartland" of cases covered by the Guidelines.

Specifically, on November 1, 1994 additions to Section 5K2.0's commentary made a limited allowance for a totality of circumstances departure:

> The commission does not foreclose the possibility of an extraordinary case that because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

See also, United States v. Broderson, 67 F.3d 452 (2nd Cir. 1995).

In the instant case, Brendan suggests that there are several factors as set forth in Paragraph III A and B when taken together should be considered in assessing the totality of the circumstances with respect to the count of conviction.

IV.   **18 U.S.C. §3553(a) Analysis**

The Courts have made it clear, that the Court, in rendering a sentence, should "consider"



not only the Guideline sentence, but also must "consider" the factors set forth under 18 U.S.C. §3553(a). Certainly, a sentence of 72 months under these circumstances would be consistent with 18 U.S.C. §3553(a) which requires the Court to consider the nature and circumstances of the offense, the seriousness of the offense, the history and characteristics of the Defendant, the need for just punishment, deterrence, protection of the public from further crimes of the Defendant, any pertinent policy statements of the sentencing commission and the need to avoid unwarranted sentences which varies among defendants with similar records who have been found guilty of similar conduct.

In this case there are certainly aggravating factors as well as mitigating factors.

The aggravating factor in this case is obvious. Brendan has engaged in serious criminal conduct in this matter, resulting in his convictions for federal crimes.

However, there are mitigating factors in his case which support a sentence of 72 months. First, in analyzing factors under §3553(a), it is important to consider Brendan's life and experiences, his history and upbringing as a whole story, in addition to weighing the conduct at issue in this matter. In doing so, it is important in determining an appropriate sentence, to keep in mind the totally unstable environment that Brendan was raised in as more specifically set forth in section III A herein above.

Secondly, an important consideration is the "need to avoid unwarranted sentences which varies among Defendants with similar records who have been found guilty of similar conduct". It appears that the guideline in this case seems to be totally at variance with what another Defendant would receive in a similar case.

For example, the PSR in paragraph 112, determines that the Guideline Sentencing Range



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

in Brendan's case is 360 to life.

It would seem the Guideline Sentence determined in the Pre-Sentence Report does not provide much guidance to the Court as to what would be an appropriate Sentence, because the Guidelines are so extreme in relationship to what is normally given for a Sentence in the District of Vermont in similar cases. Brendan's conduct in this case is far less egregious than other cases in this District where defendants were given sentences in excess of 8 years.

For example, in *United States v. Michael Hayes*, No. 2:18-CR-123-3 (D. Vt.) The defendant pled guilty to conspiring to distribute 28 grams or more of cocaine base and 500 grams or more of powder cocaine; possessing a firearm in furtherance of a drug trafficking offense, and accessory after the fact. This case involved the shooting death of a drug dealer, and while Mr. Hayes was not involved in the shooting, others in the conspiracy admitted to being at the location where the shooting occurred. Mr. Hayes moved the dead man's body. Pursuant to agreements with the government, the Court sentenced Mr. Hayes to 10 years on the drug trafficking and accessory after the fact offenses, concurrent to each other, and 5 years on the firearm offense, consecutive to the 10 year sentences, for a total sentence of 15 years.

Similarly, in *United States v. Johnny Ford*, No. 2:19-CR-80-4 (D. Vt.), the defendant pled guilty to conspiracy to distribute cocaine base; conspiracy to use a firearm during or in relation to, and to possess a firearm in furtherance of drug trafficking; and being a felon in possession of a firearm. Mr. Ford was involved in a shoot-out where a rival drug dealer was shot by Mr. Ford and a co-defendant, and died. Mr. Ford was sentenced to 15 years for his involvement in the drug trafficking conspiracy to use a firearm offenses and the felon in possession offense.

In the case of *United States v. Monroe*, No. 5:16-CR-00139, the Defendant who was a



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

10

Champlain College student intentionally shot and killed the individual who was supplying him with drugs. In that case, the Court sentenced the Defendant to 25 years.

Another relevant case is *United States v. Nathaniel Jones*, No. 2:22-CR-00154 where the Defendant was sentenced to 11 years. In this case, the Defendant was given an enhancement because of violence that occurred during the drug conspiracy. Specifically, an incident that took place where the Defendant along with several other co-conspirators, kidnapped a woman and physically assaulted her, causing serious bodily injuries. In addition, Jones had approximately 26 convictions beginning at the age of 12. The convictions included drug offenses, possession of stolen property, driving with license suspension, and assault and battery to name a few. Also, the Defendant had at least 2 pending cases and 23 other cases involving contact with authorities over the years that were eventually dismissed. Finally, the Jones case involved illegal possession of firearms and drug distribution.

Another example is the case of *United States v. Ortiz*, No. 2:21-CR-00049, in which the Defendant was Sentenced on March 4th, 2024 to a sentence of 110 months. His sentence was based on 2 convictions, Count 1 which included possession with intent to distribute heroin, fentanyl, and cocaine base, and Count 2 which involved possession of a firearm in furtherance of a drug trafficking crime. Ortiz had a history of violence. For example, on May 7th, 2021 the St. Johnsbury Police Department responded to an incident where it was reported that Ortiz robbed an individual at gunpoint. The Defendant also violently attacked another inmate during his incarceration pending Sentencing.

Ortiz' criminal record is extremely extensive. Ortiz had approximately 22 convictions beginning at the age of 17. They included numerous controlled substances events, probation



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

11

violations, larceny, sales of controlled substances, several assaults, and resisting arrest, to name a few. His Criminal History points resulted in a score of 13. In addition, Ortiz had 4 criminal cases that were dismissed and 2 pending charges at the time of his Sentencing.

Finally, in the case of *Unites States v. Barbosa*, No. 2:23-CR-00108-wks-1, the Defendant was sentenced to 10 and a half years in prison followed by 3 years of supervised release. According to the Discovery, Ms. Barbosa pled guilty to distribution of drugs and possession of firearms in furtherance of a drug trafficking crime. The evidence was that she not only distributed large quantities of drugs in the Brattleboro, Vermont area, but that she was a member of the GMS, a violent gang based out of Hartford, Connecticut. It was also shown that the Defendant traded drugs for guns and that some of those firearms were used in a shooting in Hartford, Connecticut. Including a double homicide in August of 2023. One of her associates was involved in a shooting during a drug dispute in Brattleboro, Vermont in March of 2023. It is also clear that the Defendant utilized firearms to protect her drug operation and created a violent environment.

The facts of Brendan's case, including his background, differ significantly in almost all aspects from the above cited cases and are far less egregious than others who received large sentences.

A good example is Brendan's criminal record. Brendan only has 4 criminal convictions. The first occurred when he was 16 years old, in which Brendan was convicted of possessing a forearm without having a pistol permit. His second conviction occurred when Brendan was 20 years old for possession of a narcotic, for which he was given a 9 month sentence. Brendan's third conviction occurred at the age of 23, and was a conspiracy to distribute controlled



substances in New Haven, Connecticut. Brendan's sentence was 12 months incarceration followed by 3 years of supervised release. Finally, at the age of 25, on July 23rd, 2018, Brendan was convicted in Federal Court in Connecticut of possession with intent to distribute drugs and was given a 14 month sentence with 3 years of supervised release.

It is important to note that none of Brendan's prior convictions involve violence or the threat of violence, possession of a firearm in relation to a drug offense, or using a firearm in a threatening manner.

Not only does Brendan not have a history of violence and/or threats to anyone, none of that occurred in the instant matter. In this matter, Brendan is not receiving an enhancement for violence or threats, and there is no credible evidence that Brendan engaged in violence or threats of violence.

Finally, in this matter, it has been determined that Brendan illegally possessed a number of firearms, but there is no evidence that he did anything with these firearms other than possessing them. Again, there's no evidence that Brendan ever carried a firearm when engaged in a drug transaction or used a firearm to threaten anyone. It seems apparent that the firearm enhancements are so extreme that they paint a picture of someone possessing firearms that is totally inconsistent with the actual facts of this case.

Based on the above, a sentence of 72 months should be sufficient to assist Brendan in his rehabilitation efforts. First, Brendan's efforts at rehabilitation since his arrest and incarceration in this matter has been excellent given his personal history. It is obvious that Brendan has chosen to use this opportunity to take the necessary steps to better understand himself and to acquire the tools he needs to lead a productive life, once he has finished serving his sentence. An example of



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

Brendan's commitment to his rehabilitation are the numerous programs he has completed since his arrest. Again, according to Brendan in his interview attached as exhibit A he is committed to leading a productive life, as follows:

> "MR. KAPLAN: You think you're done?
> MR. SALMON: I know I'm done. It's not about thinking. I was done before I came to jail. It was a relief getting arrested, to be honest with you. It was a relief, because I remember one time I texted my girl and was just like, "yo, I hate this life." It's just this life of being in the street is too overwhelming. It's too much."

Secondly, Brendan has pled guilty in a timely fashion and appears to be sincere in accepting responsibility, a necessary first step.

Thirdly, Brendan has demonstrated that he is capable of complying with rules and regulations. For example, since his arrest, he has had only one violation.

Finally, Brendan will have ample opportunity to continue his rehabilitation while incarcerated and also on supervised release. For example, Brendan is interested in participating in the programs offered by the Bureau of Prisons. In addition, once Brendan is released he will be able to continue programming while on supervised release.

Also, it would seem that a sentence of 72 months would be a sufficient punishment for Brendan for several reasons.

First, the anticipated sentence that Brendan will receive will certainly be substantially longer than any other time he has been incarcerated.

Secondly, being incarcerated for 72 months is a significant sentence and should not be considered a slap on the wrist.

Finally, a 72 month sentence is reasonable considering Brendan's record.



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

In conclusion, it would seem that a period of incarceration of 72 months would be sufficient but not be greater than necessary to comply with the purposes of sentencing, and, is consistent with the factors set forth in 18 U.S.C. §3553(a).

In further support of this Motion are some of the certificates earned by Brendan attached as exhibits B-B7 and letters of support attached as exhibits C-C8.

DATED at Burlington, Vermont, this 9th day of June, 2025

Respectfully Submitted,

BRENDAN SALMON

By Counsel

KAPLAN AND KAPLAN



Mark A. Kaplan, Esquire
95 St. Paul Street, Suite 405
Burlington, Vermont 05401
(802) 651-0013
(802) 448-3478 (fax)
Mkaplan@kaplanlawvt.com